UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re

ALAN and ELIZABETH MURRAY,  No. 11-10535

                Debtor(s).
_____/

Memorandum re Motion for Summary Disposition of Sanctions Motion
_____

I. Introduction

      Prior to their Chapter 11 filing, debtors Alan and Elizabeth Murray were defendants in state court litigation brought by a group of tenants ("Tenants") of an RV park operated by an entity owned by the Murrays. The Tenants' complaint against the Murrays listed a litany of causes of action, including unfair business practices, fraud, breach of contract, negligence, conspiracy, etc. On the eve of trial in state court, the Murrays filed their Chapter 11 petition.

      The Tenants all filed bankruptcy claims for $100,000.00 each. The claims were signed by their attorney in the state court litigation, Bradford Floyd. Five of the claims (18, 19, 20, 24 and 25) were subsequently amended by claims signed by attorney Jocelyn Godinho. Two claims (22 and 23) were amended by claims signed by attorney Carol White. All of them claimed $100,000.00.

      Prior to confirmation, the Murrays made motions for summary judgment which were heard and mostly denied by Bankruptcy Judge M. Elaine Hammond. While ruling on the motions, Judge

1  Hammond noted that the claims appeared to be grossly inflated and that at most there were valid
2  claims for a few thousand dollars each. The undersigned estimated the claims at zero for voting
3  purposes and set a final evidentiary hearing on them after confirmation of the Murrays' plan.
4      On the eve of the final hearing, the Tenants moved the court for leave to withdraw their claims.
5  Because all parties and the court had prepared for trial, the court would only permit withdrawal of the
6  claims with prejudice. The Tenants agreed and the court so ordered on February 5, 2013. The order
7  preserved the Murrays' right o bring a motion for sanctions pursuant to Rule 9011.
8      On August 17, 2012, counsel for the Murrays had sent attorney Thomas Hjerpe and attorney
9  White a "safe harbor" letter and draft motion for sanctions, demanding the withdrawal of the claims of
10 the tenants. On April 17, 2013, the Murrays filed a motion for sanctions pursuant to Rule
11 9011(c)(1)(A) of the Federal Rules of Bankruptcy Procedure. The Tenants have moved the court for
12 summary denial of the motion, arguing that the "safe harbor" motion was not properly served, that the
13 motion is barred by the preclusive effect of the confirmed plan, and that the filed motion differs in
14 minor ways from the original draft. One of these arguments seem to have merit.
15
16 II. Service of the Safe Harbor Motion
17     Rule 9011(c)(1)(A) specifically requires that the "safe harbor" motion be served pursuant to
18 Rule 7004. Service on an attorney is not good service under Rule 7004 unless the attorney has been
19 authorized to accept service. *In re Villar,* 317 B.R. 88, 93 (9th Cir. BAP 2004). The mere fact that an
20 attorney signs a proof of claim does not mean the attorney is implicitly authorized to accept service,
21 even when the attorney is named as the recipient of notices; the person so designated is authorized
22 only to receive general notices pursuant to Rule 2002(g)(1)(A), not service pursuant to Rule 7004. *In*
23 *re State Line Hotel, Inc.,* 323 B.R. 703, 710 (9th Cir. BAP 2005); *In re Assoc. of Volleyball*
24 *Professionals,* 256 B.R. 313, 319 (Bkrtcy.C.D.Cal. 2000).
25     Service of a "safe harbor" motion is made by serving the actual person to be sanctioned, not his
26 counsel. *In re Full Gospel Assembly of Delray Beach, Inc.,* 2007 WL 1423613*3 (Bkrtcy.S.D.Fla.,

2

2007)[service of "safe harbor" motion defective where "served only on [Creditor's] counsel . . . which would be proper service under Rule 7005 but is not proper service under Rule 7004"]; *Toth-Fejel v. Kramer & Toth-Fejel Law Firm,* 1999 WL 1012870*5 (D.Ore. 1999)[affirming the ruling of the bankruptcy court that "the phrase in Rule 9011, requiring service "as provided in Rule 7004", requires that motions for sanctions be served directly to the individual whose conduct is being challenged (as opposed to serving that party's counsel, as provided in Rule 7005)."].

Where the totality of the circumstances demonstrates the intent of the client to give the attorney implied authorization to accept service of process, service on the attorney may be deemed sufficient under Rule 7004. *In re Focus Media, Inc.,* 387 F.3d 1077, 1079 (9th Cir. 2004). However, those circumstances must include an act of the principal; authority cannot be established solely from the attorney's actions. *Id.* at 1084. In this case, Mr. Hjerpe's involvement was minimal[1] and Ms. White's active involvement in the case was after the "safe harbor" motion was sent to her. Given the express language of Rule 9011, the court does not find an act of the Tenants sufficient to implicitly authorize either counsel to accept service of process.

III. Preclusion

Citing *In re Kelley,* 199 B.R. 698, 704 (9th Cir. BAP 1996) and ignoring later case law, the Tenants argue that confirmation of the Murrays' Chapter 11 plan had preclusive effect, necessarily barring the Murrays from prosecuting their motion for sanctions. The Murrays argue that their plan preserves their right to pursue sanctions against the Tenants. The court disagrees with both the Tenants and the Murrays.

The "safe harbor" motion was mailed on August 17, 2012. The Murrays' plan was filed on October 26, 2012, and confirmed on December 19, 2012. Contrary to the Murrays' assertions, there is

---

[1] Attorney Godinho is an employee of Hjerpe. While the court has been generally unimpressed with their efforts to distance each other in this case, there is nothing in the record sufficient to make Mr. Hjerpe an agent for service of process.

3

nothing in their plan which preserves their right to seek sanctions. Section 7.18 of the plan specifies several preserved claims, but not the right to seek sanctions against the Tenants. It does preserved counterclaims against claimants, but a right to seek sanctions for filing a claim is not a counterclaim.[2] Likewise, nothing in Section 18 has the effect of preserving the sanctions claims. The Murrays could have filed their motion 21 days after August 17, 2012, so they clearly had a right to file the motion when their plan was being considered. Their failure to preserve their sanction rights in their plan could preclude their attempt to pursue it now.

However, the current state of the law is set forth in *In re Associated Vintage Group, Inc.,* 283 B.R. 549 (9th Cir. BAP 2002). Whether a claim is barred by the doctrines of claim preclusion or judicial estoppel is not a mechanical determination but rather requires a pragmatic, case-by-case analysis. *Id* at 558. The court declines to make this analysis in light of its ruling that service of the motion was defective, but it is possible that the Murrays are not precluded or barred from seeking sanctions by their confirmed plan notwithstanding its failure to specifically reserve the right.

IV. Deviation of Motion from Draft

The Tenants argue that because the motion as filed contained more allegations than the draft served under the "safe harbor" provision, the entire motion must be denied. The Tenants cite (or rather mis-cite) *Truesdell v. SouthernCal.Permanente Med.*, 293 F.3d 1146, 1151 (9th Cir. 2002), as standing for the proposition that "The Debtors were required to serve the allegedly offending parties with a "filing-ready" motion." The case holds no such thing, and at worse the court could limit the sanctionable conduct and the relief granted to the draft motion. The entire motion is not defective because of post-service additions. Since the court disposes of the motion on other grounds, it does not address this argument further.

---

[2] The court notes that the lawyers for the Tenants are not themselves claimants, so even if the court were to interpret "counterclaim" to include a sanctions motion there would be no basis for arguing that claims against the attorneys were preserved by the plan.

4

V. Sanctions on the Court's Initiative

The court could of course avoid the technical deficiencies of the Murrays' motion by raising the issue on the court's own initiative pursuant to Rule 9011(c)(1)(B), but the court has no interest in doing so. The court shares the opinion of Judge Hammond that the Tenants' claims, while inflated and overblown, probably had a small element of validity - perhaps a few thousand dollars each - which may be enough to avoid sanctions and is certainly enough to avoid burdening the court with having to adjudicate the merits of withdrawn claims. The court is mindful of the fact that it was the Murrays themselves who avoided liquidation of the claims by filing their bankruptcy petition on the eve of the state court trial of the Tenants' complaint against them.

More importantly, the court feels strongly that it is time for the Murrays and the Tenants to stop behaving like Montagues and Capulets and end their litigation. The court will accordingly deny the Murrays' motion but retain jurisdiction to raise the matter on its own motion if the court's desire for peace is thwarted.

VI. Conclusion

For the foregoing reasons, the court will grant the Tenants' motion to dismiss the Murrays' motion for sanctions but will retain jurisdiction to raise the same issues on its own initiative if it appears necessary. A separate order will be entered.

Dated: June 10, 2013

Alan Jaroslovsky
Chief Bankruptcy Judge

5